UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EXIDE TECHNOLOGIES                                          PLAINTIFF/COUNTERDEFENDANT

v.                                       No. 2:18-CV-02087

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS AND ITS
LOCAL UNION NO. 700                                          DEFENDANT/COUNTERPLAINTIFF

## OPINION AND ORDER

On May 16, 2018, Exide Technologies ("Exide") filed a complaint (Doc. 1) in this Court. Pursuant to 29 U.S.C. § 185(a), Exide asks the Court to vacate an opinion and award entered by an arbitrator following arbitration of a collective bargaining agreement dispute. International Brotherhood of Electrical Workers and its local union No. 700 ("IBEW Local 700") answered and counterclaimed (Doc. 13), asking the Court to confirm the arbitrator's opinion and award. Exide filed an answer (Doc. 15). The parties agreed (Doc. 17) that no discovery was necessary in this matter because the record and evidence had been fully developed during the arbitration and postarbitration process, and that because no issues of fact were in dispute, no bench trial was necessary and the parties could submit the matter on summary judgment.

Before the Court are cross-motions for summary judgment. IBEW Local 700 filed a motion for summary judgment (Doc. 19), statement of facts (Doc. 20), and brief (Doc. 21) in support. Exide filed a response (Doc. 25) and statement of facts (Doc. 26) in opposition. IBEW Local 700 filed a reply (Doc. 29). Separately, Exide filed a motion for summary judgment (Doc. 22), brief (Doc. 23), and statement of facts (Doc. 24) in support. IBEW Local 700 filed a response (Doc. 27) and statement of facts (Doc. 28) in opposition. Exide filed a reply (Doc. 30). On March 7, 2019, the Court held a hearing on the motions.

1

## I. Background

The Court has carefully reviewed the parties' statements of fact and responses to statements of fact, considered those statements of fact in light of clarifications provided at the hearing, and concludes that there are no genuine disputes of material fact and that these motions for summary judgment are not affected by inferences to be drawn from the facts. Rather, every purported dispute of fact is instead a dispute between the parties about the legal import of that fact.

Exide is a battery recycler and manufacturer with a plant in Fort Smith, Arkansas. IBEW Local 700 is the recognized bargaining agent for production and maintenance employees at the plant. IBEW Local 700 and Exide are parties to a collective bargaining agreement ("CBA") (Doc. 1-2), which agrees that unresolved grievances are to be submitted to arbitration. The CBA also addresses Family and Medical Leave Act ("FMLA") leave administration.

On August 22, 2016, Exide notified employees that Unum would be assuming responsibility for FMLA administration. On August 31, 2016, IBEW Local 700 filed a grievance, claiming that the transition to Unum was a major change in terms and conditions of employment. Exide denied the grievance, and IBEW Local 700 filed two unfair labor practice charges with the National Labor Relations Board ("NLRB"). The cases were consolidated, the unfair labor practice charges were conditionally dismissed under the NLRB's deferral policy, and the dispute regarding the CBA was submitted to binding arbitration in accordance with the CBA's provisions.

Following arbitration, the arbitrator issued an opinion and award (Doc. 1-2, pp. 238–255) finding that Exide violated the CBA and committed an unfair labor practice in violation of § 8 of the National Labor Relations Act, 29 U.S.C. § 158 when it unilaterally contracted with a third party administrator to administrate FMLA leave and refused to submit to collective bargaining on that issue. The arbitrator ordered Exide to return to its prior FMLA leave administration policies,

make whole any employees who endured discipline or monetary loss for failing to follow the new policies, and submit to collective bargaining on this issue at IBEW Local 700's request. Exide filed this action to vacate the arbitrator's findings and award, and the parties have briefed the matter for judgment.

## II. Standard of Review

Where there is no genuine dispute of material fact, "[t]he court shall grant summary judgment if the movant shows that . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where cross-motions are filed, each motion is considered in its own right. *Wermager v. Cormorant Township Board*, 716 F.2d 1211, 1214 (8th Cir. 1983).

Where, as here, a party files an action pursuant to 29 U.S.C. § 185 concerning a collective bargaining agreement dispute that has been subject to arbitration, the Court "review[s] an arbitrator's award to determine whether: (1) the parties agreed to arbitrate; and (2) the arbitrator had the power to make the award." *PSC Custom, LP v. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local No. 11-770*, 763 F.3d 1005, 1008 (8th Cir. 2014) (quoting *Excel Corp. v. United Food & Commercial Workers International Union, Local 431*, 102 F.3d 1464, 1467 (8th Cir. 1996)). And where, as here, the parties agree to arbitrate and the arbitrator has authority, "[j]udicial review of an arbitrator's decision is extremely limited." *Id.*

> [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworks International Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Where the arbitrator is arguably construing the contract within the scope of his authority, the Court "must

3

accord an extraordinary level of deference to the arbitrator's award." *Boise Cascade Corp. v. Paper Allied-Industrial, Chemical & Energy Workers*, 309 F.3d 1075, 1080 (8th Cir. 2002).

An arbitration award fails to draw its essence from the contract when "it is contrary to the plain language of the agreement, *Bureau of Engraving, Inc. v. Graphic Communications International Union, Local 1B*, 164 F.3d 427, 429 (8th Cir. 1999); where "relevant language [is] not considered by the arbitrator" or the "decision does not account for essential clauses and does not give a reason for the failure to mention essential clauses," *George A. Hormel & Co. v. United Food & Commercial Workers, Local 9, AFL-CIO*, 879 F.2d 347, 351 (8th Cir. 1989); or where the contract is silent or ambiguous as to the parties' intent and the arbitrator fails to consider the parties' past practices, *Bureau of Engraving, Inc.*, 164 F.3d at 429–30. In such cases, the arbitration award may be vacated.

## III. Analysis

Because the cross-motions do not raise any factual dispute, but merely present an issue of law for the Court to decide, they may be addressed together.

### A. Arbitrator's Opinion: Collective Bargaining Agreement Dispute

Exide asks the Court to vacate the arbitrator's opinion and award on the basis that the arbitrator's decision does not draw its essence from the CBA. Exide argues the arbitrator either ignored the CBA's clear language or acted contrary to it, impermissibly modified the CBA, and failed to consider the parties' past practices. Specifically, Exide argues that Article 2 of the CBA, entitled "Management Rights" (Doc. 1-2, p. 10), gives Exide exclusive authority to determine procedures and to contract out work, and that the arbitrator ignored this provision in reaching his decision. The relevant sections of that Article read:

> Par. 12
> SECTION 1. Management Rights. The Union recognizes the inherent right of the

> Company to conduct its business in all particulars except as expressly modified by the agreement and any written supplement to the agreement. The agreement and any supplement to it shall be interpreted only according to its written provisions consistent with the efficient operation of the business and the specified contract rights of the employees and any practices established through the grievance procedure.
> Par. 13
> SECTION 2. The Company shall remain vested with all management functions including the full and exclusive control, direction and supervision of operations and the working forces, and shall have the right to change jobs or establish new jobs as required by the installation of new machinery or equipment or a change in the operating procedures. Management functions, which shall be vested solely in the Company, shall include, but not be limited to, the right to hire, transfer, promote, demote, change duties of employees, discipline, discharge for proper cause, and increase or decrease the working forces, schedule the working assignments, establish and maintain, and alter if the Company feels necessary, job requirements and working standards; to discontinue or transfer temporarily or permanently, and in whole or in part, the conduct of its business operations and to allocate work among its various plants; to contract out, subcontract work or exchange work; to determine the products to be manufactured or services to be rendered; to determine the hours of work,, [sic] the starting and quitting times and the processes, methods and procedures to be used; to make company rules and regulations governing the conduct of the working forces during their hours of employment provided they are reasonable and not in conflict with the specific terms of this Agreement.

(Doc. 1-2, p. 10).

The arbitrator was aware of Exide's argument that this section of the CBA gives Exide authority to unilaterally change leave administration. The arbitrator noted the argument in his summary of Exide's position during arbitration. (Doc. 248, p. 255). Furthermore, he specifically rejected Exide's position, relying on NLRB precedent requiring specificity in management rights clauses to find waiver of a union's right to bargain and finding no specific reservation of leave administration in the management rights article. (Doc. 1-2, p. 253). The Court takes no position on whether Exide's construction of this CBA article or the arbitrator's is the better construction because the Court should not take a position on the merits. The arbitrator referenced this CBA language, identified applicable NLRB precedent, and noted that the plain language of the CBA does not reserve "leave administration" solely to management. The arbitrator was arguably

5

construing this article of the CBA and did not ignore its plain language, so there is no basis for vacating his finding on this issue.

Exide also argues that the "procedures" section of its FMLA policies and procedures document (Doc. 1-2, pp. 64–72) was not incorporated into the CBA by Article XVII, § 2, ¶ 154 (Doc. 1-2, p. 39) because that paragraph explicitly incorporates by reference only the "FMLA Policy." The relevant CBA provision reads:

Par. 154

> SECTION 2. FAMILY MEDICAL LEAVE ACT. The Exide Technologies FMLA Policy is hereby incorporated, in its entirety as part of this Agreement. A copy of the policy is available at all locations.

(Doc. 1-2, p. 39).

Exide's argument is premised on an interpretation of the FMLA document that distinguishes between a policy portion (Doc. 1-2, pp. 64–68) and a procedures portion (Doc. 1-2, pp. 68–69). This argument is reasonable, but both sections are set out in the same document and the arbitrator decided that that document was the "FMLA Policy" that was incorporated "in its entirety" into the CBA. (Doc. 1-2, pp. 249, 252). Again, the arbitrator was arguably construing this article of the CBA and did not ignore its plain language, so there is no basis for vacating his finding on this issue.

Exide also argues that the CBA is silent about whether Exide can contract out FMLA leave management to a third party administrator, and past practices—specifically, Exide contracting out other benefits management and Exide contracting out FMLA leave without objection from labor organizations at its other facilities—clarify that the parties intended in the CBA to allow Exide to contract out FMLA leave administration. As an initial matter, the arbitrator noted that no evidence appeared in the record before him regarding "acquiescence to or acceptance of FMLA

6

administrative changes by labor organizations representing employees at other facilities operated by Exide" and so there were no FMLA-specific past practices for the arbitrator to consider. (Doc. 1-2, p. 253). With respect to the past practice of using a third party administrator to administer other leave and benefits (such as short term disability and long term disability leave and benefits), because FMLA leave administration is specifically incorporated into the CBA and other leave and benefits administration is not, the arbitrator determined that the conditions surrounding FMLA leave were too distinct from other leave and benefits administration for the past practice of using a third party administrator to be determinative. (Doc. 1-2, p. 254). The arbitrator may have drawn a different conclusion from past practices than that preferred by Exide, but the arbitrator did consider those past practices. Again, there is no basis to vacate his findings on this issue.

The arbitrator was arguably construing the language of the CBA, did not ignore plain language, essential clauses, or other relevant language in the CBA, and considered past practices. His findings and conclusions are due extraordinary deference and Exide provides no basis for the Court to vacate the arbitrator's findings or award on the CBA issue.

### B. Arbitrator's Opinion: Unfair Labor Practice

Though the challenge is not clear in Exide's complaint, in its motion briefing Exide challenges the arbitrator's finding that Exide committed unfair labor practices in violation of § 8 of the NLRA when Exide refused to submit to collective bargaining over the FMLA leave dispute, as well as the remedy the arbitrator ordered.

Though the matter was submitted to the arbitrator, the Court does not have jurisdiction to hear this challenge. *Breininger v. Sheet Metal Workers International Association Local Union No. 6*, 493 U.S. 67, 74 (1989) ("[A]s a general matter, neither state nor federal courts possess

jurisdiction over claims based on activity that is 'arguably' subject to §§ 7 or 8 of the NLRA."). IBEW Local 700 filed NLRA § 8 unfair labor practice charges with the NLRB. The NLRB issued a conditional decision to dismiss, stating that further § 8 proceedings "should be handled in accordance with the deferral policy of the [NLRB] as set forth in *Collyer Insulated Wire*, 192 NLRB 837 (1971), and *United Technologies Corp.*, 268 NLRB 557 (1984)." (Doc. 1-2, p. 240). Under that process, the NLRB defers resolution of the unfair labor practice dispute to arbitration and conditionally dismisses so that arbitration can proceed. If a party is dissatisfied with an arbitrator's decision and remedy on the § 8 claim, that party does not appeal to a United States District Court but moves the NLRB to reopen the deferred unfair labor practice charges so that the NLRB can consider the arbitrator's findings and remedy. *See NLRB v. Roswil, Inc.*, 55 F.3d 382, 390 (8th Cir. 1995) ("Moreover, pre-arbital deferral is 'merely the prudent exercise of restraint, a postponement of the use of the [NLRB]'s processes.' If Floyd were dissatisfied with the back pay awarded in arbitration, she could seek to reopen her unfair labor practice charge." (quoting *United Technologies*, 268 NLRB at 560 and citing *Lewis v. NLRB*, 800 F.2d 818, 821 (8th Cir. 1986))).

The Court can exercise some review over any final decision of the NLRB with respect to a finding on a § 8 charge, and it is during this review that the Court applies the "clearly repugnant" standard Exide identifies in its reply brief. But because Exide did not bring the matter before the NLRB, this Court may not exercise that review in this case. Exide provides no basis for the Court to vacate the arbitrator's findings or award on the unfair labor practice issue.

## IV. Conclusion

IT IS THEREFORE ORDERED that Exide Technologies's motion for summary judgment (Doc. 22) is DENIED and International Brotherhood of Electrical Workers and its local union No. 700's motion for summary judgment (Doc. 19) is GRANTED IN PART and DENIED IN PART

8

as stated herein.  Judgment will be entered accordingly.

    IT IS SO ORDERED this 23rd day of May, 2019.

                                                    /s/ P. K. Holmes, III
                                                  P.K. HOLMES, III
                                                  U.S. DISTRICT JUDGE